Hitchcock, J.
In a case so unnecessarily voluminous as the one now presented for consideration, it will be extremely difficult, within any ordinary compass, to give such a statement of tho case, that it will be fully understood. The original bill is based substantially upon facts like tho following : A man by the name of Moses Olds, many years since, resided in the State of New York, and while there intermarried with Rebecca (afterward Rebecca Carpenter), by whom he had two children, Arvilla and Horace. He abandoned his wife and settled in Kentucky, where he accumulated a large property. In Kentucky he intermarried with Elizabeth *Thomas, by whom he had several children. Some years after Moses Olds absconded, his wife Rebecca intermarried with Caleb Capenter.
Arvilla Olds subsequently intermarried with Jeremiah Carpenter.
In October, 1838, Moses Olds died, leaving four children by his Kentucky wife, two of whom, Hiram Curtis, and Sophronia, being infants, died shortly after their father. Moses Olds attempted to dispose of his estate by will, giving one-half to his wife Elizabeth for life, but she died before the testator. Under these circumstances, questions were raised as to the validity of the will, and whether tho share devised to Elizabeth descended to the heirs, she having died before the testator.
By his will Moses Olds loft to his daughter, Arvilla Carpenter, a legacy of $100, which was received by her in 1839 or 1840.
In 1844 Jeremiah Carpenter consulted with the defendant, Sea, who is a lawyer, upon this business. Sea, in consequence of this consultation, wrote to Kentucky and procured a copy of the will, and afterward entered into an arrangement with Carpenter and his wife, by which he undertook to go to Kentucky, and recover the rights of Arvilla and her mother Rebecca, in the estate or property of Moses Olds and Horace Olds, the brother of Aiwilla— the said Rebecca claiming a dower interest in said estate, and Arvilla claiming as heir.
In October, 1844, Sea went to Kentucky and contracted away all tho rights of Arvilla and Rebecca, in all the property of whatsoever description, of which Moses Olds and his infant children died possessed, for which he received securities to the amount of $3,754, payable in one year, with interest, and which has been since paid to him. On his return he procured Arvilla and her *348 husband, and Rebecca and her husband, to execute a quitclaim deed, to certain grantees in Kentucky, of their rights in the several estates, and executed to Arvilla and her husband his own note for §300, *payable in eighteen months, and delivered the same to them in full of all their claims upon him in the premises.
Such are some of the charges in the bill. The complainants further insist that, relying confidently upon Sea, they were induced to execute certain deeds and other instruments of writing, not knowing exactly their contents, but being informed by him that it was necessary to be done. They charge that Sea concealed from them the amount by him received in the compromise, and insisted that he receivod but §600. That from the confidence reposed in him they were induced to agree to give him one-half of what he should recover from said estate, but that he has refused to allow them anything over and above the said $300. Thoy'further charge that in the compromise in Kentucky ho sacrificed their interests to a greater amount than the said §3,754.
Among other things, it is prayed that the said Sea may bo. decreed to pay the complainants such amount as may be found equitably due to th em.
To this bill Sea filed an answer. Of this answer it is only necessary to state that he admits that ho undertook to attend to this business, but not upon the terms stated in the bill. He says the agreement was, that Jeremiah and Arvilla should procure a quitclaim from Caleb and Rebecca Carpenter to themselves, of all the interest of said Rebecca in the estate of Moses Olds, and that Jeremiah and Arvilla Carpenter should convey to him, Sea, all the interest of said Arvilla in said estate for his own use, and they were to give him a power of attorney to collect and dispose of the interest to be derived from Caleb and Rebecca Carpenter for the use of the said Jeremiah. That deeds and a power of attorney were executed accordingly. He says further that he made the best compromise he could, upon which compromise he received notes to the amount set forth in the bill. By the terms of the compromise he was to procure release deeds from the Carpenters, which deeds were executed. Ho states that upon his return from Kentucky he disclosed all *tho facts to Jeremiah and A.rvilla, and that they agreed to receive §300 as their share, for which ho gave his note. In making the compromise the claim of Rebecca was abandoned, and all that was received was for the *349 interest of Arvilla, which interest had been transferred to him, and he did not feel himself under any obligation to pay Jeremiah and Arvilla anything, but agreed to give them the $300. When he gave the note the complainants gave him a receipt and memorandum, explaining the whole settlement. This paper is made an exhibit. Denies that he was to receive one-half for his services.
Subsequently an amendatory bill was filed charging that said bond to Sea, and memorandum of settlement, were fraudulently procured from complainants. This amended bill was answered.
Testimony was taken, and at the October term of the court of common pleas, 1846, the following decree was entered :
“This day came the parties by their solicitors, and this cause came on to be heard upon bills, answers, exhibits and testimony, on consideration whereof and the court being fully advised in the premises, do find the equity of the case to be with the complainants, and that the said deed of conveyance from said complainants to the said respondent, Sidney Sea, bearing date Sepetembor 4, 1844, and the memorandum of settlement signed by the said complainants bearing date October 28, 1844, were severally fraudulently procured from the said complainants by the said Sidney Sea, which last-mentioned deed and memorandum of settlement are each ordered, adjudged, and decreed by the court to be null and void; and the court further order, adjudge, and decree that the said power of attorney from the said complainants to the said Sea, and the agreement between the parties relating to the estate of Horace Olds, deceased, be and the same are hereby canceled. And the court further find that the said Sidney Sea sold the interost of the said complainants in the several ^estates of Mary B. Olds, Hiram Curtis Olds, and Sophronia Olds, deceased, and received therefor the sum of $3,754, which sum including interest thereon from October 18, 1844, until the present time, being the sum of $4,200.48, in equity belongs to the said complainants. It is therefore ordered, adjudged, and decreed by the court, that the said Sidney Sea pay to the said complainants the said sum of $4,200.48, and the cost of this suit, taxed at $49.35, one day after the rising of this court, and in default thereof that execution issue as upon judgments at law. And it is further ordered, adjudged, and decreed by the court, that all other equities in favor of the said complainants in the premises be and the same are hereby expressly *350 reserved to said complainants, excepting that as to said note of $300, executed by said Sidney Sea to said complainants as aforesaid, the same be placed upon the files of this court to be canceled, which is done accordingly.”
The errors complained of are substantially as follows:
1. That the court erroneously found the equity of the case with the complainant.
2. That the court erroneously found that the deed from the complainant to Sea, dated September 4, 1844, was fraudulently procured by Sea.
3. That tho court erroneously found that the memorandum of settlement, bearing date October 28, 1844, was fraudulently procured by Sea.
4. That the court erroneously ordered and decreed, that the said deed and memorandum of settlement be held null and void.
5. That the court erroneously found that the said Sea sold the interest of the complainants in the estates of Moses, Hiram Curtis, and Sophronia Olds.
6. That the court erroneously found that Sea had received for the complainants $3,754.
7. That said court erroneously found that said Sea had *in his hands $4,200.48, which in equity belonged to the complainants.
8. That said court erroneously ordered and decreed against said Sea, that ho pay to the complainants said sum of $4,200.48, and $49.35 costs of suit.
9. The decree is against equity.
10. It is contrary to law.
11. That the court erroneously refused to continue the case.
It will bo seen that most of tho errors assigned have reference to the finding of the court. It has been repeatedly decided by this court, that where the facts are found in a decree, we will not reverse that decree, because the court may have misjudged as to the weight of the evidence upon the particular matter in issue. From the slight examination which we have made of the evidence in this case, however, we are not prepared to say that there was any mistake in the finding of the court.
The fourth error assigned is, that the court decreed that a certain deed and memorandum of settlement should be held null and void.
There certainly can be no error in this, if the fact be as found *351 by the court, that this deed and memorandum were fraudulently procured from the Carpenters by the complainant. Such being the fact, it follows, of course, that they must be declared null and void.
The eighth error assigned is, that the court decreed that certain moneys in complainant’s hands, belonging to the Carpenters, should bo paid over to them. This, too, follows as a necessary consequence from the finding of the court.
The only difficulty we have had in the case arises from the fact, that no provision is made in the decree for a compensation to the complainant, for his expenses and services in the transaction of this business. It is alleged in the original bill, and we have no doubt of the fact, although it is most positively denied in the answer, that he was to have one-half of what he should recover. Under the ^circumstances, he ought not to have received this much, but we should have been better satisfied if some compensation, a reasonable compensation, had been allowed him. But the question now is, whether there is, in fact, anything erroneous in the decree.
It is apparent that although the original agreement was to receive one-half, he at an early period so managed the business as to attempt to secure to himself the whole. The pretense set up in the answer is, that he was to have the share of Arvilla, for which he was to collect for the use of her husband the share of Rebecca ; and this was to be brought about by this kind of management: Jeremiah and Arvilla were first to procure to themselves a release from Rebecca of her interest, and were then to convey their own interest to Sea. A deed to this effect was by them executed, which was found by the court to be fraudulent. Now this maneuvering does not look right. Then, again, when the compromise is made, the interest of Rebecca is entirely, abandoned. All that is received, is received for the interest of Arvilla, and that interest has been previously vested in Sea. A faithful agent would never thus have transacted business. Besides all this, the complainant, from the time of this compromise, has retained all this property in his own hands, denying the right of his principal to any part of it. Such being the circumstances, the court of common pleas applied to him the rule, applicable to agents who are unfaithful to their trust, who abuse the confidence reposed in them, who misconduct themselves in the course of their *352 agency—-the rule, that in such cases the agent shall receive no commission or compensation ; and we are not prepared to say there was any error in this.
The demurrer is sustained, and the bill dismissed with costs.
Birchard, C. J., dissented, holding that the court of common pleas erred in not allowing Sea, some compensation for his services.